Good morning. The next case and the last case today on our agenda is number 127794, People of the State of Illinois v. Caroline Woods, agenda number nine. Today, the counsel for appellant is appearing via Zoom. Welcome, Mr. Daniels. Are you prepared to proceed? I am, Your Honor. Good morning, Your Honors and counsel. May it please the court. I'm Assistant Appellate Defender Matthew Daniels, and I represent the appellant, Caroline Woods. Your Honors, this is a very straightforward case in which this court merely has to apply its existing precedent. The parties agree that instructional error occurred here. The jury received directly conflicting instructions on the law of parental accountability. The only question is whether to excuse that error is harmless. Under this court's longstanding precedent, the answer to that question is no. That's especially true in a case like this that involves emotionally charged allegations of severe child abuse. This court should grant Caroline a new trial. So starting with the precedent, this court has repeatedly held that when the jury receives directly conflicting instructions, one instruction that correctly states the law and one that misstates the law, that is reversible error, that is not harmless. Now, that is a unique doctrine within this court's larger instructional error jurisprudence. We know that the general rule is that when there's instructional error, the harmless error usually can apply, but it's not true here with directly conflicting instructions. And the reason for this exception to the general rule is simple, and it's because with directly conflicting instructions, we can't know which version of the law the jury followed, and that creates the impermissible risk that the jury reached its verdict using the incorrect statement of the law. That's a serious error. It calls into question the integrity of the judicial system. This is a precedent that is longstanding and time moderate in this court. This precedent dates back all the way to the 1860s. It's been reaffirmed time and time again, just as recently as this year by unanimous courts in People v. Hartfield. It's also a body of precedent that's been applied in a variety of different contexts. One of the contexts in which this court has applied the directly conflicting instructions rule has been in the context of the law of parental accountability. That was People v. Pollock 20 years ago. In Pollock, the jury received directly conflicting instructions on the mens rea requirement for accountability. IPI 5.03 correctly stated the law and said that a knowing mental state was required, while another instruction misstated the law and said that a negligent mental state would suffice. This court unanimously held in Pollock that was reversible error and it was not harmless. Here, there are several key facts that are not in dispute. There's no dispute that instructional error occurred. There's no dispute that the jury received directly conflicting instructions on the mens rea requirement for parental accountability. Again, the conflict was between knows versus should know. There's no disagreement that these are the exact same two directly conflicting instructions as those that were presented in Pollock. And there's no objection or there's no dispute about the fact that Caroline objected to the instruction below in the trial courts and specifically pointed to Pollock in making that objection. Counsel, does it make a difference that there was evidence in this case that the defendant did know? No, Your Honor, for two reasons. The first broad reason would be because under this court's precedence, harmless error analysis wouldn't apply. But the second reason the answer would be no is that even if this court wants to depart from its precedent and apply harmless error analysis, the result is going to be the same. Because with harmless error analysis, because we've got a constitutional error that was fully preserved, the burden is on the prosecution to show that the error was harmless beyond a reasonable doubt. That's a high bar to meet and the prosecution can't meet it here. So speaking specifically to the fact that there is evidence in this record that Caroline admitted when she testified that she knew about some of the abuse, she testified that she knew about some of it, but not necessarily all of it. So for the purposes of accountability liability, what the jury still had to do was resolve the question about whether she knew about the abuse. And we get to the heart of the conflict in the instructions here, because the conflict here deals with the mens rea requirement for accountability. It's that no versus should know. And so the jury is placed in the position of having to select what the correct statement of the law is. And that's a breakdown in the constitutional function for the jury. That's what Jenkins teaches. Matters are compounded, though, here on the facts. When we think about the dramatic nature of the allegations here, what we're dealing with in this case is a prosecution that involves allegations regarding a child who's severely abused. That is certainly going to trigger very strong emotions from anyone, especially a jury. You know, in general, kids are really the only thing that matter in our lives, particularly for folks who are parents and also counsel. Let me ask you this. I mean, Pollack was a straight accountability case. Was it not? It wasn't prosecuted that way. It was prosecuted under both theories. Well, it seems like the appellate court looked at it as a straight or this court looked at it as a straight accountability case. This case, there's evidence in the state argues evidence of your client being a principal as to both counts, both striking and burning. How do you respond to that? As to whether or not that's harmless beyond a reasonable doubt? Well, again, we don't get to the question of harmless beyond a reasonable doubt unless this court wants to depart from its precedent, which says that directly conflict conflicting instructions is air that is not harmless. And the authorities that the prosecution cites do not advance that contention because the cases that the prosecution cites aren't directly conflicting instructions cases. But to get more specifically to your point, Your Honor, as far as why, even if this court wants to conduct harmless air analysis, that the result is the same. is that the two counts under which Caroline is convicted were aggravated battery counts involving causing great bodily harm. So under the principal theory of liability, the prosecution had to prove beyond a reasonable doubt that Caroline had battered Z.W., her son, and caused great bodily harm. Her theory of the case was that she admitted that she had struck him using her hand and the belt and the flexible piece of a vacuum hose, but that that didn't cross over into the level of inflicting great bodily harm. And certainly, if we had been making the sufficiency of the evidence argument here, that would probably be enough for a reasonable jury to conclude that the prosecution that sustained its burden were not raising the sufficiency of the evidence claim. And moreover, for the purposes of harmless air analysis, evidence that is good enough for a sufficiency analysis is different than evidence that's required for showing that the evidence, the air was harmless beyond a reasonable doubt. And we don't have that here. Certainly, there could be evidence that there was some striking that was sufficient to convict, but not enough that was overwhelming. But to bring it back to why it's important to remember that we don't need to even get to that point of harmlessness in the first place. The precedent that exists is pretty clear that when we are looking at directly conflicting instructions, it's a special kind of error that creates special types of concerns. And that's why this court has repeatedly said that it's not harmless. And in Hartfield, the court even reaffirms Jenkins for the proposition that it's second pronged plain air. It is so significant an error that it calls into question the integrity of the judicial process. And Hartfield's a really important case to keep in mind here. Hartfield was decided by the time it wasn't decided when Caroline filed her opening brief and it came down, I think, about a week or so later. And so this court allowed us to cite that as additional authority. We discuss it further in the reply brief. The prosecution certainly had the benefit of Hartfield by the time it was briefing this case in this court. And the prosecution largely glosses over Hartfield. The prosecution devotes only a single sentence to Hartfield. But Hartfield is important here. Hartfield reaffirms not just the directly conflicting instructions rule, but it also reaffirms the underlying logic for the rule and why the rule matters. And so we take all of those things together. That threshold question of whether it's appropriate here to be departing from this court's precedence, certainly the arguments that the state prosecution puts forth here are not compelling. The authorities that they cite, I mentioned with regard to the cases regarding the fact that we have dual fears of prosecution. The authorities that the prosecution cites there, Davis, Williams, Le Mirage, and Pena, none of those cases are directly conflicting instructions cases. And so that does not advance the prosecution's argument in any meaningful way as far as departing from a precedent that's been in existence for over 150 years. Similarly, regarding the prosecution's alternate contention that Behr was harmless because Caroline admitted that she knew about some of the abuse. The cases that the prosecution cites, Jones and Leger and Hopp, I would submit that none of those are directly conflicting instructions cases either. Certainly Hopp isn't. And if you read a close reading of Jones and Leger suggests that they probably aren't either. Even if they're not, those authorities aren't persuasive for a couple important reasons. Jones is the most important of those cases, and Jones overlooks the directly conflicting instructions rule altogether. Doesn't cite any of the authority that had already existed at that point. Moreover, we come back to Hartfield. Hartfield's just reaffirmed, unanimously reaffirmed, this principle that we have a unique situation within the larger body of instructional error jurisprudence where the error is so significant that it calls into question the integrity of the judicial system that it's considered second-pronged plain error. So looking at all of that in its totality, this really is a very straightforward case. This is not a situation where this court is in the position where it needs to be announcing a new rule. The rule is very clear. This is really more just an error correction case. What this court's precedent has taught is that directly conflicting instructions are not harmless error, and that when we have directly conflicting instructions, that requires a new trial. It's been this court's precedent going back to the 1860s, and it was reaffirmed as recently as seven months ago. Therefore, this court should not excuse the instructional error here as harmless, and this court should reverse the judgment of the appellate courts and remand for a new trial. You know, there's some case law that says any error in instructions, it doesn't justify a reversal if it's clear that it would change the result, it wouldn't change the verdict given the evidence, all the evidence in this case. Correct? There may be, but again, the directly conflicting instructions rule is a unique exception to the general jurisprudence regarding instructional error. Here, what we're talking about is the integrity of the judicial system, and that's obviously a big deal. Anytime we're talking about a sort of error that calls into question the court's integrity, that's a reason to pause and think twice about whether we cast aside an error that everyone agrees happened as harmless. The evidence appears to be, and I hate to use this word, overwhelming in this case. There is no doubt that there was evidence sufficient to convict. There is no doubt that Z.W. was abused. There still is, I would submit, though, a question as to whether the evidence qualifies as truly being overwhelming as to Caroline's guilt under either a principle or accountability theory. But again, stepping back, when we're talking about an error that this court just seven months ago reaffirmed as actually second-pronged plain error, we need to ask ourselves under what set of circumstances we suddenly depart from this precedent that's existed for so long, particularly when the reason for this unique rule has to do with protecting the court system's integrity. The judicial system's integrity really is the centerpiece of this court's legitimacy and power. The court's legitimacy comes from the fact that the public has trust in our courts and its processes. And so any time this court has repeatedly said that we have a type of error that is so substantial that we think it actually creates questions in how the public may perceive the integrity of our judicial system, that's the sort of precedent that deserves great respect. And that's certainly what we have here. There's no dispute that we've got the same two instructions that were at issue in Pollock. There's no dispute in this court that instructional error occurred here. So the question of what to do is very clear, because this court's precedent teaches that the error isn't harmless, and to protect the integrity of the judicial system, a new trial is required. And that's what we're asking for here. If there are no further questions from the courts, I will save the remainder of my remarks for rebuttal. Thank you very much, counsel. Counsel for the appellate. Hey, please, court, counsel. I'm Assistant Attorney General Michael Sabula on behalf of the people of the state of Illinois. This court should affirm defendant's convictions because the instructional error in this case was harmless beyond a reasonable doubt. My opponent has just argued that a contradictory instruction, like the parental duty instruction in this case, can never be harmless under any possible set of circumstances. But that's incorrect. This court expressly held in Jones and Lager that contradictory instructions are subject to harmless error analysis. This court has also favorably relied on the United States Supreme Court case Hedgepath v. Polito, which also expressly found that contradictory instructions are subject to harmless error analysis. Now, my opponent has suggested that those cases don't deal with contradictory instructions. That's absolutely incorrect. They clearly do. They also clearly discuss other contradictory instruction cases and still find that contradictory instructions can be harmless, which makes perfect sense. I say that because, as my opponent has just admitted, all other kinds of instructional errors are subject to harmless error analysis. So, for example, in this case, if the parental duty instruction had completely omitted the knowledge requirement, my opponent would admit that that is subject to harmless error analysis. If, on the other hand, it was just flat-out wrong on the knowledge requirement, again, my opponent would admit that is subject to harmless error analysis. There's nothing special about a contradictory instruction that takes it away from that logic. If those errors are subject to harmless error analysis, so should contradictory instructions, which is exactly what this court held in Jones and Lager. Now, my opponent talked a lot about Hartfield and Pollack. Those cases do not purport to overrule Jones or Lager. And, as I just explained, there would be no logic to overruling them either. If you look at Hartfield and you look at Pollack, as I think some of the questions got to, those are really actually fairly narrow cases. They're narrow in two senses. First, every single case he cites involves cases where the defendant was only potentially liable under a single theory of liability. So, for example, in Pollack, it was only under accountability theory that she was possibly guilty under. They also all involve cases where the instructional error went to an element that was disputed in that case. The defendant in those cases didn't admit that particular element. They disputed it. So, for example, in Hartfield, a single theory that the defendant was a principal who shot at the police officers. The incorrect element went to a disputed the incorrect instruction went to a disputed element, whether the shot was in the direction of the police officers. So, of course, in that case, ultimately, it was not harmless, because you have one theory and the error went to an element that was disputed. The same thing in Pollack. Everyone agreed there was zero evidence that the defendant was guilty as a principal in that case. She was only possibly guilty under accountability theory. The error in that case went to the knowledge element, which she disputed. That was a disputed element of the case. So, again, that was not harmless in Pollack. And I should point out in Pollack that not only was that a case where the court found that it was not harmless because she disputed the knowledge requirement, this Court actually went the extra step in that case in saying there's zero evidence that this defendant knew of the abuse in that case. So this Court actually acquitted her. This case is fundamentally different in a couple different ways. One way it's fundamentally different is that this defendant was prosecuted under two distinct theories. Principle theory, which, of course, means she personally abused her son, and accountability theory through the parental duty rule. And this Court has ---- Kagan. Mr. Sabello, what is the plain meaning of the phrase you're getting to, the point of where a parent has a legal duty to aid a small child if the parent knows or should know about a danger to the child? Sabello. What's the meaning of that? Kagan. Yes. We admit that should know is incorrect. We admit that that's incorrect. We've been actually in our brief, we asked this Court to please correct the pattern jury instructions. We absolutely agree that that's incorrect. The only dispute in this case is whether that error is harmless. One way it's harmless, as I was mentioning, is that the State pursued two distinct theories of liability. And here the evidence was overwhelming that she was guilty as a principal, as our first point. Z.W., the defendant's son, unequivocally testified that his mother personally abused him. He said that she beat him with a belt, a bat, a pole. He said that she burned him with a hair-curling iron on his genitals. She said he said that she kept him locked up in a tiny closet with basically nothing to eat and without access to a bathroom. That was corroborated by a search of the defendant's home in which they found these exact weapons he said were used against him. They found the belt, the baseball bat, the pole, the hair-curling iron. And something I think is, frankly, chilling but also telling, they found them all close together in the living room where they were close at hand. They also found that tiny closet that he was locked in. It smelled strongly of urine because he was not allowed out to use the bathroom. They found the leather straps that were used to tie him up with DNA that was consistent with his DNA. Certainly the medical evidence was overwhelming on this point. Just a few quick examples. As my opponent pointed out, Z.W. testified and undisputed his mother hit him with a pole, among other things. There was medical testimony that he had linear scars on his body that were consistent with being beaten by a pole. He testified that his mother beat him on the legs and feet with a baseball bat. There was testimony, medical testimony, that he had broken toes and a broken femur, which is your thigh bone, as well as other scars on his leg, obviously consistent with being hit with a baseball bat. Just quickly in terms of the burning, medical testimony, he had burns all over his body, including his genitals. I think a point my opponent kind of glosses over is that the defendant admitted she beat her son with a pole, causing those linear scars, with the belt. That right there is overwhelming evidence of principal liability. I don't know how the case would be any stronger unless we had a videotape of it happening. He does try to dispute the idea that she burned her son. I'm trying to say there wasn't enough evidence she burned her son with a hair culling iron, but that's incorrect. Z.W. unequivocally testified that his mother burned him with the curling iron. He did not move an inch on that point, even though he was pushed on it in cross-examination. Obviously, as I mentioned, that was corroborated by finding the curling iron in the living room next to the other weapons his mother admits she used to abuse him, and certainly the medical testimony. My opponent also ---- She also conceded she was aware of Richardson's acts. Well, she conceded a lot of different things. And on the principal point, she conceded she burned her son with the curling iron. She just makes up an absurd story and says, yes, I burned him, but it was an accident. She wants us to believe that her son was in the bathtub and he somehow fell backwards out of the bathtub, and she coincidentally happened to be holding a curling iron that was burning, and he somehow made contact long enough to give him a scar, and, oh, it wasn't on his genitals. It was on his lower back. And, yes, she admits she knew he had burns on his penis, but she thought that was normal for a boy of that age to have burns on his penis. That's an absurd story, which shows consciousness of guilt. That's especially true in this case because the defendant has admitted she's made up other stories about her son. When the police first found her son, she said, don't listen to my son. He's a liar. You can't believe him. He injures himself and drives the blame on other people. Then she said, oh, wait, he was in a car accident. Oh, no, wait, he fell downstairs. This burning story about falling out of the bathtub is just another absurd story. She has zero credibility, but her son has great credibility because everything he said has been corroborated by other witnesses, a search of the home, and a medical testimony. And one last point, if I may, on the principal liability theory. I think there were some questions about is this overwhelming. I don't know that we really need to prove overwhelming, but it is certainly overwhelming. And I would point this Court to what the trial judge said. The trial judge had an opportunity to observe all the witnesses, listen to their live testimony, observe their demeanor. He went out of his way to say that this defendant was obviously guilty as a principal. He said the record was replete with evidence that she was an active participant. I think replete with evidence is the same thing. It's overwhelming evidence. He said he wanted to make sure that the record was clear. She was not convicted as just being a passive observer, but she was an active participant. So on the first point, Your Honor, yes, there was a problem with the parental duty instruction, but it was completely harmless, number one, because the evidence was overwhelming that she was guilty as a principal. If I could quickly move to our alternative theory, which is that even if we assume for the sake of argument that she was convicted under the accountability principle, it's still harmless error. My opponent wants this Court to believe that there is a risk, not only that she was convicted under the accountability theory, but that the jury relied on this should-have-known language. There's zero chance this jury relied on that should-have-known language because defendant herself admitted she knew. And just to make a very obvious point here, if I may, this is a child that was covered head to toe in open wounds, scars, and burn marks. No one could look at this child and not immediately realize that he was being abused. Z.W., the child, himself said, yes, my mother knows I'm being abused by the police. She knows, but she didn't care. Defendant conceded at trial she knew. Defendant, my opponent wants to say she may not have known about every injury or cause of it. Well, yes, that's because he's literally covered head to toe in injuries. So she may not have known the cause of every single one of them. But she couldn't deny that she did know about the abuse. And, in fact, that was her theory at trial. Yes, I knew about the abuse. I knew his injuries were so significant that he needed to go to the hospital, even though I didn't take him. But I didn't do anything because I was afraid of my fiancé. Defense counsel repeated those points in closing argument, telling the jury, yes, she knew. She knew what the fiancé was doing. But she couldn't contact police. She was afraid of him. So that context shows why this error is harmless. There was zero risk the jury relied on this incorrect, should have known language, because the defense was repeatedly telling them she did know. And if I could just briefly mention, I think, a case that's really analogous, which is this Court's decision in Jones. And I want to bring this up because I think my opponent, again, glosses over it, is that in Jones, the victim was shot multiple times but survived. The defendant was charged with attempted murder. Similar to this case, the jury was given a contradictory instruction on the mens rea requirement of attempted murder. They were correctly told attempted murder requires intent to kill. They were incorrectly told that attempted murder just requires intent to cause great bodily harm, which is wrong. The defendant in that case, after he was convicted, made the exact arguments that this defendant was making. And he relied on the exact cases, cases like Jenkins, and said, that's a contradictory instruction. I'm automatically entitled to a new trial. In that case, the appellate court agreed with the defendant, said, yep, contradictory instruction, get a new trial. The case came up to this Court. And what did this Court say? This Court said, no, you're not entitled to a new trial. This Court, contrary to what my opponent said, did consider contradictory instruction cases, not just Jenkins, which is what the appellate court relied on below in that case, but Trinkle, which was a directly contradictory instruction case. And this Court said, no, the error here is harmless. Why? Because we look at what happened at trial. And at trial in that case, the defendant admitted, yes, whoever shot this victim clearly had the intent to kill. He was shot four times, after all. But the shooter was someone else. It wasn't me. So this Court reached a completely logical conclusion that, therefore, that particular error was harmless. That error applies exactly here. Yes, the jury should not have been told about the should-have-known language, but it had no effect on this trial. The trial would have reached the exact same result because the defendant expressly told the jury that she did know. So if I could just briefly make one last point, Your Honor. I think what the people are asking here is very minimal. We're just asking this Court to keep applying Jones and Lager, which all that means is that some cases there might be harmless error. All we're asking for is that they continue to be subject to harmless error review. Cases like Hartfield are very limited to cases where there's a single theory of liability and where the instructional error was about an element that was disputed at trial. Here we have two different theories of liability, and the error went to an element that was undisputed at trial, that was admitted by the defendant. So unless there are any other questions, we would ask this Court to affirm defendant's convictions. Thank you. Thank you very much. Thank you, Your Honors. A few points in rebuttal. Contrary to the prosecution's assertion, Hartfield and Pollack are not narrow precedents, and I'll give you a couple of key reasons why here. Here's what Pollack said regarding the directly conflicting instructions rule. If conflicting instructions are given, according to Pollack, the error cannot be deemed harmless. That's not a narrow pronouncement of the rule. That is something much broader than that. Similarly with Hartfield, here's what Hartfield, this Court unanimously said just seven months ago in Hartfield. Regardless of whether it is plain error or harmless error analysis, such error is presumed to be prejudicial. And the reason why is because we can never know which instruction the jury was following. Now, second, contrary to the prosecution's assertion, the prosecution here is asking for more than a simple modification of the precedent. What the prosecution is asking to do is really potentially erode this Court's precedents regarding directly conflicting instructions. Right now, what we have is a precedent that is very clear, very easy to apply, and it advances the policy of protecting the integrity of the judicial system. How do you reconcile your position with the Jones case? Again, Jones overlooks the directly conflicting instructions rule. Contrary to what the prosecution says, there is no mention of this specific principle that with directly conflicting instructions, we have a breakdown in the constitutional process. And Jenkins goes into great detail about this. Generally speaking, with a judge and jury system, the jury is presumed to follow the law, but you can't rely on that underlying presumption with directly conflicting instructions because the Court has not given the law in the way where the jury knows what the law is. The jury is now in the position of being not just the fact finder, but the giver of the law by having to select which of those two instructions applies. Jones doesn't address that at all. And again, Hartfield just said that this is second-pronged, plain error. And that gets me to the other reason why the carve-out that the prosecution is asking for here doesn't make sense. And it actually gets to the possibility of eroding the forfeiture doctrine. Keep in mind here that we're here regarding a preserved error, and the question is whether it's harmless. If this Court finds that it's harmless, we now have a tension with Hartfield and Jenkins, which says that this is second-pronged, plain error. And so not only does that create a result that's unfair to Caroline, who did the right thing and brought this error to the attention of the trial court, but going forward, it's going to create the situation where an attorney who is in a similar situation where there cannot bring up the error to the trial courts to allow the court to fix its own error because it's going to be second-pronged, plain error. And that is certainly counter to what the forfeiture doctrine is all about. So in that sense, the carve-out that the prosecution is asking for here doesn't make much sense either. Now, the prosecution spends a lot of time talking about the facts here. And we agree. The facts here are it's a shocking crime, and shocking crimes put law to its severest test because we have situations where emotions are aroused and the passions of the fact-finder and even reviewing courts can be very easily implicated or triggered because of the sort of the shocking nature of the offense. And those are the sorts of cases where we really need to see this as like a stress test for our court's commitment to its core principles. It's undisputed that the integrity of the judicial system is essential to this court's functioning in order to have public confidence and trust. It tells the world who we are, that we provide fair processes to litigants. That's the situation we find ourselves in here. And for that reason, this court should not look for a reason to be, this court should not stray and depart from more than 150 years of continuous precedent that was just unanimously reaffirmed seven months ago. For that reason, this court should reverse the judgment of the appellate courts and remand for a new trial. This case number 127794, People of the State of Illinois v. Caroline Woods. Agenda number nine will be taken under advisement. Thank you both counsel for your spirited arguments.